IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES G. VIGNOLA, | No. CIV S-04-2425-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Pursuant to the consent of the parties, this case is before the undersigned for final decision on plaintiff's motion for summary judgment (Doc. 11) and defendant's cross-motion for summary judgment (Doc. 14).

/ / /

/ / /

/ / /

/ / /

## I.  BACKGROUND

Plaintiff applied for disability insurance ("DI") benefits on June 9, 2003, based on disability.  In his applications, plaintiff claims that his impairment began on December 12, 2002.  Plaintiff claims his disability consists of a combination of back and neck pain, and dizziness.  Plaintiff is a United States citizen born August 9, 1948, with a high school education and one year of college.

### A.  Summary of the Evidence

The record contains progress reports from plaintiff's treating physician, Carl H. Shin, M.D.  Dr. Shin's records also include a letter he wrote on February 20, 2004, at the request of plaintiff's counsel outlining plaintiff's current diagnoses, as well as Dr. Shin's responses to an agency physical residual functional capacity questionnaire.

In progress notes dated July 17, 2003, Dr. Shin stated that plaintiff reported persistent headache, neck pain, and dizziness.  Dr. Shin observed no objective changes since plaintiff's last visit.

In progress notes dated October 9, 2003, Dr. Shin stated that plaintiff's neck and low back pain were unchanged.  Dr. Shin noted that plaintiff reported consistent and unrelenting pain, and that medication had been controlling his pain symptoms only occasionally.  As to objective findings, Dr. Shin noted no changes since plaintiff's last visit.  Dr. Shin opined that plaintiff's pain condition is permanent and that he needs chronic pain management.  Dr. Shin concluded that surgery was too risky.

In the February 20, 2004, letter, Dr. Shin diagnosed plaintiff with: (1) chronic low back pain with MRI demonstrating focal protrusion at L5-S1; (2) chronic neck pain, cervicogenic headache with MRI demonstrating degenerative disc changes at C5-6 and C6-7; and (3) chronic

/ / /

/ / /

/ / /

dizziness. Dr. Shin opined:

> Due to the patient's chronic pain condition he suffers from significant disability in terms of his ability to work in a competitive labor market. In my opinion, I do not think Mr. Vignola is able to handle anything other than a sedentary job, indicating that the workload should be sufficiently light such that he is able to handle the work in a sitting position. Furthermore, the patient needs to be able to change positions as needed. Prolonged sitting is also a limitation for Mr. Vignola. He is not able to sit for longer than 20-30 minutes at a time. If he should be required to sit for such a length of time he will need to take a break for approximately five minutes so that he can walk around.
>
> Mr. Vignola's upper extremities are limited such that he needs to avoid any repetitive use of the upper extremities. He needs to avoid activities above the shoulder level. These limitation are due to his severe neck pain and to his chronic dizziness.
>
> The patient has been taking significant doses of narcotic medications to control his pain symptoms. These medications include Lorcet 10/650 four tablets per day and Tylenol No. 3 two tablets per day. The common side effects of these medications are drowsiness, difficulty concentrating, dizziness, and constipation. These medications also can result in depression. Mr. Vignola's ability to concentrate and focus on a task is further compromised by the use of these medications and I anticipate that it will be a challenge for him to work a full eight-hour shift. However, he may be able to tolerate four to six hours of work, with sufficient breaks.

Dr. Shin also stated that the possibility of neck and lumbar surgery could not be ruled out.

On the agency residual functional capacity questionnaire, completed by Dr. Shin on February 20, 2004, Dr. Shin stated that plaintiff suffers from chronic neck and low back pain and that his prognosis is poor. Dr. Shin also listed dizziness as one of plaintiff's symptoms. Protruding disc and degenerative disc changes were identified as the clinical findings. Dr. Shin indicated that fatigue, dizziness, drowsiness, and depression were the common side effects of plaintiff's pain medications. Dr. Shin said that emotional factors do not contribute to the severity of plaintiff's condition and that plaintiff could perform low stress jobs.

The record also contains a residual functional capacity assessment prepared on July 15, 2003, by C. Richard Dann, M.D., who was retained by the agency as a non-examining physician. As to exertional limitations, Dr. Dann concluded that plaintiff could occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry up to 10 pounds, stand and/or walk

3

about 6 hours in an 8-hour workday (with normal breaks), and sit for about 6 hours in an 8-hour workday (again, with normal breaks). Dr. Dann also concluded that plaintiff is unlimited in pushing and/or pulling, other than as shown for lifting and/or carrying, but should not engage in frequent or prolonged overhead reaching. Dr. Dann stated that no treating or examining source statements were part of his file review.

**B.      Procedural History**

Plaintiff's claims were initially denied. Following denial of his request for reconsideration, plaintiff requested an administrative hearing, which was held on April 5, 2004, before Administrative Law Judge ("ALJ") Antonio Aceveda-Torres.

In his May 26, 2004, decision, the ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision;

2. The claimant has not engaged in substantial gainful activity since the alleged onset date of disability;

3. The claimant's degenerative disc disease is a severe impairment, based upon the requirements in the Regulations;

4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4;

5. Th claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision;

6. The claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour day, and sit 6 hours in an 8-hour day; the claimant's capacity for pushing and/or pulling is unlimited other than as shown for lifting and/or carrying; the claimant is limited to occasional climbing, stooping, crouching, and crawling; further, the claimant should avoid frequent or prolonged overhead reaching;

7. The claimant's past relevant work as a warehouse manager did not require the performance of work-related activities precluded by his residual functional capacity;

8. The claimant's medically determinable degenerative disc disease does not prevent the claimant from performing his past relevant work; and

       9.      The claimant was not under a disability at any time through the date of the decision.

Based on these findings, the ALJ concluded that plaintiff was not disabled and, therefore, not entitled to DI benefits. After the Appeals Council declined review on September 29, 2004, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." See Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

///

## III.  DISCUSSION

In his motion for summary judgment, plaintiff argues that ALJ erred in relying on the assessment of a non-examining agency physician.  Specifically, plaintiff argues the ALJ erred because: (1) greater weight should have been afforded to the opinion of Dr. Shin because he is plaintiff's treating physician; and (2) no weight should have been afforded to Dr. Dann's opinion because it does not constitute substantial evidence.

### A. Dr. Shin's Opinion

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

the facts and conflicting clinical evidence, states his interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

          Here, the ALJ accurately summarized Dr. Shin's records as follows:

> In his July 17, 2003, progress report, Carl H. Shin, M.D. indicates the claimant was seen in follow up concerning his complaints of persistent headache, neck pain, and dizziness.  Dr. Shin indicated that there was no significant change in the objective findings and advised the claimant to continue with his medicinal regimen . . .  He also advised the claimant to follow up with the neuro-otologist . . .  In his next progress report dated October 9, 2003, Dr. Shin indicated that the claimant had been started on Verapamil to determine whether migraines might be the cause of his dizziness.  Dr. Shin again indicated, as in his earlier report, that there had been no significant changes in the objective findings.  However, he also indicated the claimant had persistent low back pain which was not mentioned in the previous report.  Dr. Shin reported that medications control the claimant's symptoms to the degree he is able to do some things around the house, but not much more, indicating he has difficulty with prolonged sitting and standing, walking too far, lifting, and bending.  Dr. Shin opined that surgical intervention posed too much risk in terms of making things worse.  He further opined the claimant requires chronic pain management.  In a letter and physical residual functional capacity questionnaire form dated February 20, 2004, Dr. Shin opined the claimant's chronic neck and low back pain and dizziness imposed functional limitations so significant he would be unable to handle anything other than sedentary work on less than a full-time basis.  Dr. Shin also indicated that future surgery of the neck and lumbar spine cannot be ruled out.

/ / /

/ / /

/ / /

The ALJ's decision sets forth the following rationale for rejecting Dr. Shin's opinion:

> The opinion rendered by Dr. Shin is rejected in its entirety as it is not supported by his progress notes or the record as a whole. Specifically, Dr. Shin's progress notes do not contain information concerning specific findings on physical examination such as range of motion, tenderness to palpation, sensation, muscle spasm, and the like. As discussed elsewhere in this decision, there has been little adjustment to the claimant's medicinal or overall treatment regimen. Given the claimant's allegations of only minimal benefit with treatment, it is highly unlikely such treatment regimen would remain essentially static. Rather, one might expect to see that a more exhaustive range of treatment modalities has been employed in an effort toward achieving more effective relief of symptoms. In addition, Dr. Shin's progress reports and opinion appear to contain inconsistencies. For example, in his February 20, 2004, opinion, Dr. Shin indicates the claimant experiences side effects to medication consisting of fatigue, dizziness, drowsiness, and depression. However, his progress reports make no mention of any complaint of side effects. Moreover, in the February 20, 2004, letter that accompanied his Physical Residual Functional Capacity Questionnaire, Dr. Shin listed the common side effects to narcotic medications, but he did not definitively state that the claimant experiences any of these potential side effects. Dizziness as a side effect to medication is particularly questionable in light of the claimant's history of complaints of dizziness which preceded prescription of the alleged offending medications. It would appear that Dr. Shin relied quite heavily on the subjective report of symptoms and limitations provided by the claimant. Yet, as explained elsewhere in this decision, there exists good reasons for questioning the reliability of the claimant's subjective complaints. The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question depart substantially from the rest of the evidence of record, as in the current case.

From this, the court is satisfied that the ALJ met the procedural requirements for rejecting the opinion of a treating physician. Specifically, the ALJ set forth specific and legitimate reasons for rejecting Dr. Shin's opinion.   See Lester, 81 F.3d at 830.  Moreover, the ALJ did this by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation of the evidence, and making a finding.  See Magallanes, 881 F.2d at 751-55.  The question is whether the reasons the ALJ gave for rejecting Dr. Shin's opinion are supported by substantial evidence.

As detailed in the ALJ's decision, the following reasons served as the bases for rejecting Dr. Shin's opinion:

1. Dr. Shin's progress notes do not contain information concerning specific findings on physical examination;

2. Given that plaintiff claims only minimal benefit with treatment, it is highly questionable that Dr. Shin's treatment regimen remained essentially static;

3. Dr. Shin's progress reports and opinion contain inconsistencies;

4. Dr. Shin's diagnosis of dizziness as a side effect to medication is questionable in light of allegations of dizziness which preceded medication; and

5. Dr. Shin relied on the subjective report of symptoms and limitations provided by plaintiff, who is not found to be credible.

With respect to the first reason stated – that Dr. Shin's progress notes do not contain specific objective findings – the court has reviewed the progress notes and agrees with the ALJ's finding. On both progress notes contained in the record, Dr. Shin made no specific objective findings. All that was noted was that there had been no changes since the previous visit. Yet, there are no specific findings on physical examination – in either progress report – upon which to support such a conclusion.

Next, with respect to the second reason – that Dr. Shin's opinion is questionable given that it was static – it is clear from the record that Dr. Shin's treatment regimen did not change even though plaintiff reported little benefit from treatment. The court must wonder why Dr. Shin did not modify his treatment until plaintiff reported some benefit.

Next, with respect to the third reason – that Dr. Shin's records contain inconsistencies – the court agrees with the ALJ's analysis. In addition to the inconsistencies regarding dizziness as a side effect of medication, the ALJ alluded to two other inconsistencies supported by the record. First, October 9, 2003, progress notes, Dr. Shin ruled out surgery as too risky. However, in the February 20, 2004, letter to plaintiff's counsel, Dr. Shin stated that surgery could <u>not</u> be ruled out. Given that Dr. Shin's notes consistently indicate that he observed

9

no objective changes in plaintiff's condition, the court finds it questionable that surgery would first be ruled out and then, for no apparent reason, suddenly be an option. Second, Dr. Shin's progress notes differ in that one identifies low back pain as one of plaintiff's complaint, and the other does not. Based on these, as well as the inconsistencies specifically identified by the ALJ, the court concludes that the third reason for rejecting Dr. Shin's opinion is also supported by substantial evidence.

As to the fourth stated reason – that Dr. Shin's assessment of plaintiff's dizziness as a side effect of medications is questionable in light of plaintiff's complaints of dizziness which precede his taking medications – the court also finds this reason to be supported by substantial evidence. It is clear based on disability information provided by plaintiff that he claims he cannot work due, in part, to dizziness and that he sought medical treatment from, among others, Dr. Shin for this problem. The same records also show that plaintiff was prescribed medication for the dizziness and his other problems. Therefore, the court is left to wonder, as the ALJ must have, whether dizziness is an objective symptom or a side effect of medication.

Finally, as to the final reason stated by the ALJ – that Dr. Shin relied on plaintiff's non-credible subjective complaints – the court notes that plaintiff does not challenge the ALJ's credibility finding. Therefore, it was appropriate for the ALJ to cite this as a reason for rejecting Dr. Shin's opinion. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

In sum, the court concludes that the ALJ did not err in rejecting Dr. Shin's opinion.

**B.     Dr. Dann's Opinion**

Plaintiff argues the ALJ also erred in accepting Dr. Dann's opinion for two reasons. First, plaintiff cites 20 C.F.R. § 404.1527(d)(3) for the proposition that the weight given to non-examining sources depends on the degree to which the source provides supporting explanations. Plaintiff concludes that, because Dr. Dann acknowledged that plaintiff had degenerative disc disease and osteoarthritis, his opinion that plaintiff can perform the full range of light work is not supported by the record. Plaintiff, however, ignores that Dr. Dann stated that

1  plaintiff would not be capable of performing light work until December 2003.  Dr. Dann reviewed
2  medical records from January 2003 and concluded that plaintiff was totally disabled at that time.
3  Dr. Dann also reviewed records from March 2003 which showed that plaintiff's condition was
4  improving, but that there was still discomfort.  Thus, Dr. Dann's opinion that plaintiff could
5  perform light work by December 2003 is supported by the trend of improvement shown in the
6  records and is a sufficient explanation for his opinion.
7           Plaintiff also asserts that the ALJ erred in accepting Dr. Dann's opinion because he
8  did not also make Dr. Dann's resume part of the record, despite plaintiff's counsel having
9  requested that the resume be included in the record.  The court finds this argument specious.
10 Plaintiff cited to page 40 of the certified administrative record on file in this case in support of his
11 assertion that he requested that Dr. Dann's resume be included in the record.   Upon review of
12 page 40 (which is a portion of the transcript of the administrative hearing containing plaintiff's
13 counsel's closing arguments), the court finds no such request.  What plaintiff's counsel said was:
14 "The only medical assessment that counters a findings of disability is from a non-examining state
15 agency doctor whose resume is not even part of the file.  So, not only did that doctor not see the
16 Claimant but we also really don't know what his professional qualifications are."  These
17 statements are neither a request to include Dr. Dann's resume in the record nor an objection to Dr.
18 Dann's report being included in the record.  At most, the statements are an argument as to the
19 weight that should be given Dr. Dann's opinion.
20          Thus, the court concludes that the ALJ did not err in accepting Dr. Dann's opinion.
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

        1.    Plaintiff's motion for summary judgment is denied;

        2.    Defendant's cross-motion for summary judgment is granted; and

        3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED:  February 24, 2006.

                                    **CRAIG M. KELLISON**
                                    UNITED STATES MAGISTRATE JUDGE